UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**BRANDON W. LATIMER**  CIVIL ACTION NO. 11-CV-806

VERSUS

**CHET MORRISON CONTRACTORS**  MAGISTRATE JUDGE HANNA

MEMORANDUM RULING

Before the court is a motion for summary judgment filed by Chet Morrison Contractors L.L.C. (hereinafter "CMC") seeking dismissal of the plaintiff's claims against it based on the exclusivity provisions of the Longshore and Harbor Worker's Compensation Act (33 U.S.C. § 901 et.seq. hereinafter the LHWCA).[1] Jurisdiction is based on 46 U.S.C. § 1331. For the reasons set forth below, the motion is GRANTED.

*Factual and Procedural Background:*

The plaintiff, Brandon Latimer, alleged that he was hired by CMC to work as a welder aboard the stationary platform known as 'Rig 245,' on the outer continental shelf off the coast of Louisiana. On July 16, 2009, Latimer's first day of work on the rig, he was carrying a lifeline rope from one area of the platform to another. He had the rope wrapped around his shoulders and trailing behind him.

---

[1] Rec. Doc. 59.

Latimer alleged that Defendant Charles Endom[2] "intentionally stepped on the rope," jerking Latimer backward.  When Endom removed his foot from the rope, Latimer allegedly stumbled forward and slipped in a wet and dirty depression on the platform floor.  Latimer alleged that as a result of the incident he sustained injuries to his neck, left shoulder, low back and left knee.[3]

Pertinent to this motion, Latimer alleged his injury was caused "by the negligence" of his employer CMC in failing to provide him "with a safe place to work and perform his duties; in failing to provide him with competent co-employees and experienced personnel; in failing to enforce proper rules and regulations for the safety of employees on the platform; and in failing to provide safe materials, means, appliances, and personnel for performance of his work."  He has additionally alleged that CMC "was negligent and is liable for the negligence and intentional acts of its employee, Charles Endom, for deliberately stepping upon the trailing line and causing the injuries to plaintiff. . ."

Latimer also alleged the accident "was caused by the negligence" of Endom "By failing to work in a safe and cautious manner; and, by intentionally stepping

---

[2] The co-employee defendant was originally identified as Charles Odem.  A Third Amended Complaint was filed December 7, 2011 to correctly name the individual defendant as Charles Endom. [Rec. Doc. 23]

[3] CMC contests that the plaintiff stumbled, slipped and was injured, but assumes solely for purposes of this motion the plaintiff's allegations are true.

upon the rope trailing from and wrapped around plaintiff's shoulders."

Finally, Plaintiff declared in the complaint that as a result of the accident, CMC paid benefits to the plaintiff under the LHWCA, and therefore, was a solidary obligor with other co-defendants.

It is undisputed that the plaintiff was an employee covered by the LHWCA, and he has filed and pursued a compensation claim under the Act with the U.S. Department of Labor. CMC asserts that Latimer's exclusive remedy against his employer for the alleged accident and injuries is worker's compensation benefits and there is no 'intentional tort' exception to the LHWCA's exclusivity provisions. Alternatively, CMC argues that even if the court were to recognize an intentional act exception, CMC cannot be liable under *respondeat superior* principles for the intentional act of its employee which was outside the course and scope of the employee's employment.

In response, the plaintiff argues that while the Fifth Circuit has yet to specifically recognize an 'intentional act' exception to the LHWCA exclusivity provision, there are indications in the jurisprudence that the court would be willing to do so under the right circumstances. The plaintiff further argues that the actions of Endom were admitted to be intentional, and they were undertaken during the course and scope of Endom's employment by CMC. Per the plaintiff, "[I]f this

does not present the right circumstances than[sic] there is nothing that will."[4] Finally, the plaintiff argues that at the very least, this case presents questions of fact involving key issues which must be resolved by trial on the merits.

    Submitted in support of the motion is a declaration by Endom and excerpts from the deposition of the plaintiff. The plaintiff submitted the entirety of Endom's deposition at the time of the hearing. Endom admitted in the declaration that he stepped on the trailing end of the rope but "was simply playing and did not intend in any way to injure Mr. Latimer."[5] In his deposition, Endom testified there had been no animosity between he and Latimer; the incident occurred on the first day he worked with Latimer, and he was acting completely on his own. Since there had been some joking and playing around among the crew, he stepped on the line "in a joking manner," but did not intend to injure Latimer, and there was "no harm meant," all of which was consistent with his handwritten statement provided shortly after the time of the incident.[6] There is nothing in the testimony of the plaintiff to contradict these facts.

---

    [4]    Rec. Doc. 65, p. 4.

    [5]    Rec. Doc. 59-5, p. 1.

    [6]    Pltf. Ex. 1, pp. 36-39, 53-55, 58.

## ANALYSIS

*The Summary Judgment Standard*:

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. at 325. The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Sun Trust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005).

***The LHWCA and the Exclusivity Provision:***

There is no dispute that Latimer's claim against CMC is governed by the provisions of the Outer Continental Shelf Lands Act (OCSLA) 43 U.S.C. §1331 et seq.[7], and thereby, the provisions of the LHWCA.[8]

In 1927, Congress passed the LHWCA to give longshoremen a national

---

[7] The OCSLA is the federal body of law that governs cases and controversies "arising out of, or in connection with ... any operation conducted on the outer Continental Shelf which involves exploration, development or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1).

[8] The OCSLA provides that "With respect to disability or death of any employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf ... compensation shall be payable under the provisions of the Longshore and Harbor Workers' Compensation Act." 43 U.S.C. § 1333(b) (2006).

workmen's compensation law to fill the void created by decisions of the Supreme Court that longshoremen could not come within state compensation laws nor be placed therein by an act of Congress. *Parker v. Motor Boat Sales, Inc.*, 314 U.S. 244, 249–50 (1941). The dominant intent of Congress in enacting the LHWCA was to help longshoremen. *Bludworth Shipyard, Inc. v. Lira,* 700 F.2d 1046, 1051 (5th Cir.1983). Therefore, as remedial legislation, the Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 268 (1977), *quoting Voris v. Eikel*, 346 U.S. 328, 333 (1953).

Like other workers' compensation statutes, the LHWCA represents a compromise between employees and their employers whereby employers relinquish their defenses to tort actions in exchange for limited and predictable liability, and employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail. *See Fisher v. Halliburton*, 667 F. 3d at 610, citing *Morrison-Knudsen Constr. Co. v. Director, Office of Workers' Comp. Programs*, 461 U.S. 624, 636 (1983). Keeping these policies in mind, as in any case involving the interpretation of a statute, it is appropriate to begin with the statute's pertinent language. *United States v. Rains*, 615 F.3d 589, 596 (5th Cir. 2010) citing *Watt v. Alaska*, 451 U.S.

259, 265 (1981).

Pursuant to §903 of the Act, a worker who comes within the coverage of the LHWCA, is entitled to compensation for disability "only if the disability . . . results from an injury. . .." Section 902(2) defines injury as:

> accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

As part of the employer/employee compromise, pertinent provisions of § 905(a) make an employer's liability under the workers' compensation scheme exclusive:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.[9]

---

[9] 33 U.S.C.A. §933(i) also provides that the right to compensation or benefits under the LHWCA "shall be the exclusive remedy to an employee when he is injured... by the

Nothing in the language of the provision identifies an intentional tort exception, and, to date, the Fifth Circuit has "not yet expressly recognized" such an exception. *Fisher v. Halliburton*, 667 F.3d at 617. *Fisher* does point out cases which suggest such an exception could be recognized on the basis that an intentional act is not "accidental" for purposes of "accidental injury" under §902(2). *Id.* at 617-618 n. 59; see also *Johnson v. Odeco Oil & Gas. Co.* 864 F.2d 40, 44 (5th Cir. 1989) and cases cited therein. However, in those cases, the courts "take a very narrow view of the types of intentional injury that lie outside of the LHWCA-the cases consistently require that the employer have had a specific intent or desire that the *injury* occur." *Id.* at 618 n. 61; (empasis added) See also *Smith v. XTO Offshore, Inc.,* 2012 WL 1247224, *3 (E.D. La. 2012).

In the instant case, the Court need not go further down the intentional tort exception trail, since the uncontroverted facts in the record make such an effort unnecessary. When the facts of a case are undisputed and a reasonable person can draw only one plausible inference from those facts, the court is presented with a question of law. *Fisher v. Halliburton,* 667 F.3d 602, 611(5th Cir. 2012)*; Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 465(5th Cir. 2005). The plaintiff has not

---

negligence or wrong of any other person or persons in the same employ."

alleged that his employer committed an intentional tort; all allegations against CMC in the pleadings are characterized by the plaintiff as "negligence." There is no evidence of any intent on the part of CMC to injure the plaintiff, therefore, the plaintiff has no claim in tort against CMC for any of its alleged actions.

The plaintiff also seeks to hold CMC vicariously liable for the intentional act of Endom, the co-employee who intentionally stepped on the lifeline rope which trailed behind the plaintiff. Applying §902(2), an injury "arising out of and in the course of employment . . . includes an injury caused by the *willful* act of a third person directed against an employee because of his employment." (Emphasis added)

Under §902(3), the term "employee" is defined to include "any person engaged in maritime employment. . . ." Thus, it has been held that a co-employee could be a "third person" within the provisions of §902(2) while the employer could not. *Sharp v. Elkins,* 616 F.Supp. 1561, 1565-66 (W.D. La. 1985).

Assuming that to be the case, in *Fisher*, the Fifth Circuit considered the third-person aspect of §902(2) and noted "Congress's recognition of the proposition that employees are generally entitled to workers' compensation for injuries caused by the intentional acts of third parties when there is a connection between the third-party assault and the conditions and character of the employee's

occupation." *Fisher v. Halliburton*, 667 F.3d at 612. The court also recognized the distinction that "an employee is not entitled to compensation when a third party acts for purely personal reasons only coincidentally related to the employee's work." *Id.* at 613.

The jurisprudence is consistent on the issue of whether injuries from employee disputes or pranks "arise out of employment" as the term is contemplated in the liberally-construed LHWCA. *See General Accident, Fire & Life Assur. Corporation v. Crowell,* 76 F.2d 341, 342 (5th Cir. 1935) ("practically all the cases hold that when the horseplay is initiated by the other employee the injured person may recover" under the Act); *Southern Pacific Co. v. Sheppeard*, 112 F.2d 147,148 (5th Cir. 1940) (If, in the course of employment, a quarrel over work leads one employee to injure another, the injury arises out of the employment within the meaning of the Act.); *West Penn Sand & Gravel Co. v. Norton*, 95 F.2d 498, 499 (3rd Cir. 938) (Injuries or deaths resulting from "horseplay" "arise out of" employment within this chapter if the "horseplay" has some causal connection with employment.)

In *O'Leary v. Brown-Pacific-Maxon,* 340 U.S. 504, 506-07 (1951) the Court held that the employee need only establish that the "obligation or conditions of employment create the zone of special danger out of which the injury arose." The

"zone of special danger" created by the conditions of an employee's job has been recognized as a basis to find injuries sustained as a result of horseplay in a bar was covered under the Act. See *Kalama Services, Inc. v. Director, Office of Workers' Compensation Programs,* 354 F.3d 1085, 1092 (9th Cir. 2004) where the employee's restricted environment with few recreational activities created a special zone of danger such that horseplay was a foreseeable incident of his employment. Such an analysis, when combined with the uncontroverted evidence, persuade this Court that the injuries allegedly sustained as a result of the incident in this case should be covered under the Act.

The Third Circuit expounded on the compensability of workplace pranks by reviewing cases dating even before the enactment of the LHWCA:

> The Longshoremen's Act of March 4, 1927, 44 Stat. 1924, followed in the main the Workmen's Compensation Law of the state of New York. 'It is familiar law that whenever Congress * * * has borrowed from the statutes of state provisions which have received in that state a known and settled construction before their enactment by Congress, that construction will be deemed to have been adopted by Congress together with the text which it expounded, and the provisions will be construed as they were understood at the time in the State. *Capital Traction Co. v. Hof*, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873; *see, also, Henrietta Min. & Mill. Co. v. Gardner*, 173 U.S. 123, 19 S.Ct. 327, 43 L.Ed. 637; *Brown v. Walker*, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; *Marlin v. Lewallen*, 276 U.S. 58, 48 S.Ct. 248, 72 L.Ed. 467.' *Hartford Accident & Indemnity Co. v. Hoage*, 66 App.D.C. 154, 85 F.2d 411, 413. The interpretation to be given to the words 'out of' in the Longshoremen's Act should be the same as that given to them by

>the Court of Appeals of New York in the case of *Leonbruno v. Champlain Silk Mills, supra*, and other New York cases decided prior to the enactment of the Longshoremen's Act. In the *Leonbruno* Case, a workman lost 'the better part of the sight of one eye' as a result of having been hit by an apple thrown by a fellow employee in sport. Mr. Justice Cardozo, then on the Court of Appeals of New York, held that this injury arose 'out of' the employment. He said that the injured employee's 'presence in a factory * * * involved exposure to the risk of injury from the careless acts of those about him. * * * Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service.' He also quoted Mr. Justice Kalish, who, in the case of *Hulley v. Moosbrugger*, 87 N.J.L. 103, 93 A. 79, said that it was but natural to expect young men and even workmen 'of maturer years * * * to joke with or play a prank upon a fellow workman,' and 'is a matter of common knowledge to every one who employs labor.'

*West Penn Sand & Gravel Co. v. Norton*, 95 F.2d at 500.

It is undisputed that the incident occurred during work time, on the platform where CMC required both men to be, under the supervision of CMC. Latimer was hauling workplace equipment at the time of the incident, and the lifeline rope was the instrumentality for Endom's impulsive action.  But for their presence in the restricted CMC work environment on an offshore platform, it is more than probable that Latimer and Endom would not have crossed paths at all.  While stepping on the end of the trailing rope may have constituted a "wilful act", there is no allegation or evidence of a specific intent to injure. There is no evidence that the prank initiated by Endom was done for anything other than the stated purpose

of "playing," "joking," and "making the time go by" in the restricted environment of an offshore platform. Therefore, this Court finds that the injuries the plaintiff alleges arose out of the employment of both Latimer and Endom by CMC and that the willful act by the Endom falls within the definition of "injury" set out in §902(2). The statute makes the plaintiff's injury compensable, and therefore, the plaintiff's LHWCA remedy against CMC is exclusive. 33 U.S.C. § 905.

After considering the record and the positions of the parties as set out above, and construing all facts and justifiable inferences in the light most favorable to the plaintiff, the Court finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. The Motion for Summary Judgment by Defendant Chet Morrison Contractors, LLC. is therefore granted, and the claims of the plaintiff against CMC are dismissed with prejudice.

***The Claims against Charles Endom***:

Although not made the subject of a motion by any party, the plaintiff's claims against the co-employee Charles Endom will also be addressed by the Court, consistent with the authority established in Rule 56(f):

> **(f) Judgment Independent of the Motion**. After giving notice and a reasonable time to respond, the court may:
> (1) grant summary judgment for a nonmovant;

> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

At the recent oral argument on the CMC motion, the court notified the parties of the co-employee liability issues presented by the uncontroverted facts of the case, inviting and hearing the parties' comments and arguments on the question. Endom, who is unrepresented, was not present at the hearing, but the other parties agreed that, absent an intentional act, the exclusivity provisions of the LHWCA would be applicable to the claims made against him. At 33 U.S.C.A. §933(i), the Act provides:

> **(i) Right to compensation as exclusive remedy**
>
> The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: *Provided*, That this provision shall not affect the liability of a person other than an officer or employee of the employer.

There is no dispute among the parties that both Latimer and Endom were employees of CMC at the time of the incident at issue. They were thus "persons in the same employ" within the meaning of the exclusivity provision of §933(i). This provision does not protect employers; it protects negligent co-employees. *Perron v. Bell Maintenance and Fabricators, Inc.*, 970 F.2d 1409, 1412 (5th Cir. 1992);

*Sharp v. Elkins*, 616 F. Supp. at 1564; *Hughes v. Chitty*, 415 F.2d 1150, 1152 (5th Cir. 1969). Considering the addition of the word "wrong" as a disjunct to negligence in §933(i), this Court finds it logical to apply this jurisprudence to the facts of this case where the evidence is uncontroverted that there was an intentional act of a co-employee in stepping on a trailing rope end as part of horseplay with a co-employee, but no evidence of any intent to injure. This finding is consistent with the clear directive of the Fifth Circuit in *Nations v. Morris*, 483 F.2d 577, 587-88(5th Cir. 1973):

> Sections 905(a) and 933(i) of L & H completely obliterates the rights at common, civil or maritime law against Employer and fellow employee. Congress in its unlimited power has determined that the relationship gives rise only to compensation liabilities. The nature of the obligation is that there is no –the word is *no*–obligation. (Emphasis in original)

Considering the uncontroverted record and the applicable law, the Court finds that the claims against Endom should also be dismissed with prejudice pursuant to Fed. R. Civ. P. 56(f).

Signed at Lafayette, Louisiana on October 9th, 2013.

_____
Patrick J. Hanna
United States Magistrate Judge