# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**BRANDON W. LATIMER**                    **CIVIL ACTION NO. 11-CV-806**

**VERSUS**

**CHET MORRISON CONTRACTORS**        **MAGISTRATE JUDGE HANNA**

### MEMORANDUM RULING

This case comes before this Court for disposition pursuant to 28 U.S.C. §636(c)(1).  Jurisdiction is premised on 28 U.S.C. §1331.  Pending before the Court is the Motion for Summary Judgment filed by El Paso Natural Gas Company, L.P. (El Paso) and Tennessee Gas Pipeline Company, LLC. (TGP). [Rec. Doc. 73].  The initial opposition to the motion was authored  by the last attorney of record for the plaintiff and a reply was filed by the movants. [Rec. Docs. 83, 85]. Plaintiff's counsel withdrew, and after multiple unsuccessful attempts to secure representation, the plaintiff is proceeding *pro se.* The plaintiff was allowed to supplement the record with materials in opposition to the motion and oral argument was heard on March 24, 2014.[1] [Rec. Doc. 94, 103]. On that

---

[1]At oral argument, in order to provide the most complete record, the Court ordered the production of the entire deposition transcripts, including exhibits, of witnesses relied upon by the parties in their supporting and opposing memoranda to the court. [Rec. Doc. 106] In addition to the documents attached to the parties' submissions in support of and opposition to the motion, the court has reviewed and considered as part of the summary judgment record the complete depositions of Brandon Latimer (taken December 20, 2012), Charles Endom (taken August 16, 2013), and Shawn Ryan (taken November 1, 2013), along with the attachments to each.

same date, the plaintiff attempted to supplement the record again with documents
and tape recordings of various phone conversations which this Court inventoried
on the record, however, as it was clear from the inventory that multiple documents
(none of which had been provided to opposing counsel) included communications
between the plaintiff and his three previous attorneys, the Court ordered the
materials to be placed in the evidence vault by the Clerk of Court and advised the
plaintiff that they would not be considered unless and until a written waiver of
attorney client privilege was provided in order to allow for disclosure to opposing
counsel. [Rec. Docs. 104-106][2]. No waiver was ever provided and the materials
have not been considered.[3] For the reasons set out below, the motion is
GRANTED.

### Factual Background:

The plaintiff was hired by Chet Morrison Contractors, L.L.C. to work as a
welder aboard the stationary platform known as 'Vermilion Rig 245,' on the outer
continental shelf off the coast of Louisiana.  The plaintiff originally alleged that

---

[2]See also transcript of hearing during which materials were inventoried at Rec.
Doc. 116.

[3]The plaintiff also filed another set of documents into the record on April 24, 2014
docketed as "Affidavits re Minutes of Telephone Conference" [Rec. Doc. 112]. Another
set docketed as "Affidavits" was filed on May 15, 2014. [Rec. Doc. 117]. This Court has
not considered those filings in addressing this motion as neither were directed to this
motion and, if they were intended to be directed to this motion, they were not timely filed.

the platform was owned by El Paso.  In an Amended Complaint, Chevron U.S.A. Inc. was added as a defendant, and the plaintiff alleged that El Paso and/or Chevron owned and operated the platform.  In a Second Amended Complaint, TGP was named as a defendant in place of Chevron, and the plaintiff alleged that the rig was owned and operated by El Paso and/or TGP.  Although TGP has acknowledged its ownership of the platform in its Statement of Uncontested Material Facts and on the record at oral argument, the plaintiff continues to assert that El Paso is the owner of the platform. For purposes of this motion, the Court will accept the plaintiff's allegation of ownership/operation by El Paso and TGP's admission of ownership as well.

On July 16, 2009, the plaintiff's first day of work on the platform, he was carrying a lifeline rope from one area of the platform to another.  He had the rope wrapped around his shoulders and trailing behind him.  His co-employee, Charles Endom, who was also named as a defendant,[4] stepped on the trailing end of the rope initially jerking the plaintiff backward.  When Endom removed his foot from the rope, the plaintiff stumbled forward, without falling, slipping on water which had accumulated in a depression on the deck as a result of a rainstorm which had

---

[4]The co-employee defendant was originally identified as Charles Odem.  A Third Amended Complaint was filed December 7, 2011 to correctly name the individual defendant as Charles Endom. [Rec. Doc. 21].

occurred "right before" Endom stepped on the rope.[5]  Endom acknowledged his

intentional act to step on the rope as described by the plaintiff, testifying that he

did so as a prank. The plaintiff alleged that as a result of the intentional act by

Endom,  he sustained injuries to his neck, left shoulder, low back and left knee.

The plaintiff alleged his injury was caused by the negligence of his

employer, Chet Morrison,  in failing to provide him with a safe place to work and

perform his duties; failing to provide him with competent co-employees and

experienced personnel; failing to enforce proper rules and regulations for the

safety of employees on the platform; and failing to provide safe materials, means,

appliances, and personnel for performance of his work.  He additionally alleged

that his employer was liable for the negligence and intentional acts of his co-

employee Charles Endom.  Those claims, as well as the claims against Endom

individually, have been dismissed by summary judgment based on the exclusivity

provisions of the Longshore and Harbor Worker's Compensation Act. (33 U.S.C.

§901 et. seq.) [Rec. Doc. 80].

As to El Paso and TGP, the plaintiff based his claims on Louisiana Civil

Code Arts. 2315, 2316 and 2317.  He alleged that both were negligent  in failing to

provide him "with a safe place to work and perform his duties; in failing to

_____

[5]Rec. Doc. 73-5, p. 4-7; Rec. Doc. 83-2.

-4-

provide the plaintiff with a competent crew and experienced personnel; in failing to provide and enforce proper rules and regulations for the safety of men employed on the platform; in failing to provide plaintiff with safe materials, means, appliances, and personnel to use in the performance of his work; and, in failing to properly design and maintain the platform so as to create a safe working environment; particularly in having the depression on the platform deck filled with water and other foreign substances, thus creating an unsafe and hazardous condition that was well known to the supervisory personnel of the defendant."[6]

Although appearing nowhere in the complaint, in discovery responses the plaintiff also indicated he was wearing coveralls that were too big for him which prevented him from catching his balance sooner than he otherwise would have. The plaintiff does not contend the coveralls caused him to stumble.

In the motion before the Court, El Paso and TGP jointly assert that the plaintiff cannot prove that any of his allegations of negligence on the part of the remaining defendants, even if true, were the legal cause of his alleged accident and injuries based on the evidence in the record.  While the defendants have denied that there was a depression with pooled water on the deck at the time of the incident at issue, assuming there was a depression with water from the recent

---

[6]Second Amending Complaint, pp. 2-3, [Rec.Doc. 19].

rainstorm, there is no evidence that the defendants had any actual or constructive knowledge of it.  They have also denied that they provided coveralls to the plaintiff or that he was wearing improperly fitting clothing at the time of the incident.

In response, the plaintiff clarified that he does not contend that the coveralls he wore caused his initial stumble, but prevented him from catching his balance quicker than he did.  Similarly, the plaintiff asserts that the depression in the deck and puddled water did not cause his initial stumble, but made it worse, contributing to his injury. He therefore asserts that the negligence of El Paso and TGP are not the sole causes of his accident and injury, but that the defendants' actions/inactions are joint and concurring causes.

### *Applicable Law and Analysis*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a

reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. at 325. The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Sun Trust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory

allegations, by unsubstantiated assertions, or by only a "scintilla" of evidence. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir.1994).  Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir.1993). See also *Little v. Liquid Air Corp.*, 37 F.3d 1069(5th Cir. 1994).  If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

**The Applicable Substantive Law**:

There is no dispute among the parties that,  at the time of his alleged injury, the plaintiff was working aboard a platform on the outer continental shelf off the coast of Louisiana, thus the plaintiff's claims are governed by Louisiana law by virtue of the Outer Continental Shelf Lands Act (43 U.S.C.A §1331 et seq.)  Thus, the plaintiff correctly invoked Louisiana Civil Code articles 2315, 2316, and 2317 in his complaint as the theory of liability.

*The Alleged Water-Filled Depression:*

To prove liability against the owner or custodian of a defective thing under La. C.C. art. 2317 and the appended 2317.1, the plaintiff must prove: (1) that the thing that caused his damage or injury was in the custody or care of the defendant; (2) that there was a vice or defect in the thing, which created an unreasonable risk

of harm, (3) that the defendant knew or should have known of the unreasonable risk of harm, and (4) that vice or defect caused the damage or injury. *Babino v. Jefferson Transit,* 110 So.3d 1123 (La. App. 5th Cir. 2013); *Baudy v. Travelers Indemnity of Connecticut,* 2014 WL 13866822, *9, — So.3d —, (La. App 5th Cir. 4/09/2014); *Davis v. Harrah's Lake Charles, LLC*, 945 So.2d. 878, 880-81 (La. App. 3d Cir. 2006).

TGP has acknowledged it owned the platform and the Court assumes for purposes of this motion El Paso had care or custody of the platform as the owner/operator.  Whether there was a vice or defect in the platform that created an unreasonable risk of harm is a different question.  Not every defect, and not every minor imperfection or irregularity will give rise to liability, and the fact that an accident occurred as a result of a defect does not elevate the condition of the thing to that of an unreasonably dangerous defect.  *Durmon v. Billings,* 873 So.2d 872, 876 (La.App. 2 Cir. 5/12/04), *rehearing denied, writ denied* 885 So.2d 588 (La. 10/29/04).  See also *Babino v. Jefferson Transit*, 110 So.3d at 1126.

The plaintiff could not describe the depression by size or depth or any other detail.   No other witness confirmed that it existed at all. No photographs appear in the record to provide a description of the deck's condition as it existed at the time

of the accident.[7]   There is no evidence of any past accident history as a result of

the alleged depression - a factor in determining whether a defect is unreasonably

dangerous. *Durmon v. Billings,* 873 So.2d at 876, *Price v. Roadhouse Grill,*

*Inc.,*512 F.Supp2d 511, 516, (W.D.La. 2007); *Ports v. Circle K Stores* 395 F.Supp

2d 442, 445 (W.D.La. 2005). There is no evidence of any condition of the deck

beyond the vague statements of the plaintiff that it was "uneven" or that there was

a "depression."  However, even assuming such a condition existed, there is no

evidence that it created an unreasonably dangerous condition. *Murry v. Aran*

*Energy Corp.* 863 F.Supp 315, 319 (E.D.La. 1994). Therefore, absent proof of an

unreasaonably dangerous condition caused by a defect, a burden which the

plaintiff as the non-movant must bear, summary judgment would be proper on this

basis alone.

     The record is clear that it had rained just before the alleged accident, and the

plaintiff was aware of the obvious wet surface conditions.  The accumulation of

rainwater on an offshore platform immediately after rainy weather is a temporary

_____

     [7]The plaintiff has submitted copies of photographs of the alleged accident scene,
taken some four years after the accident date.  The photographed area is dry, without any
evident unreasonable condition or feature.  The photographs have been made a part of the
record, but since there is no evidence that the photographs actually depict the deck
conditions as they existed at the time of the alleged accident, this Court does not consider
them other than for purposes of orientation.

condition and temporary pooling of rainwater does not constitute an inherent quality of the platform. While a temporary condition may constitute a hazard, it does not constitute a defect under La. Civ. Code art. 2317. *Murry v. Aran Energy Corp.*, 863 F.Supp. at 319; *Duffy v. Conoco,* 1996 WL 271635 *6 (E.D. La. 1996)*; *Crane v. Exxon Corp.,* 613 So.2d 214, 219 (La.App. 1st Cir.1992).

This Court finds there is no evidence that the alleged depression which had filled with water only moments before the plaintiff's accident was an inherent vice or defect in the platform which presented an unreasonable risk of harm to others in its normal use.

The plaintiff also has the burden to prove that the owner/custodian of the defective object or premises knew or had constructive knowledge of the unreasonable risk of harm, and could have prevented the damage by the exercise of reasonable care.  *Rolf v. Wal-Mart Stores, Inc.* 782 So.2d 15, 16 (La. App. 5th Cir. 2001).  "Knowledge of the condition is an essential element for finding liability." *Monson v. Travelers Property & Casualty Insurance Co.,* 955 So.2d 758, 762 (La. App. 5th Cir. 2007). "La. Civ. Code art. 2317.1 eliminated the distinction between the strict liability and negligence of the owner or custodian of property, by requiring a showing of knowledge or constructive knowledge to impose liability."  *Babino v. Jefferson Transit,* 110 So.3d at 1126; *Dupree v. City*

*of New Orleans,* 765 So.2d 1002, 1007 n.5 (La. 2000); *Maiorana v. Melancon Metal Bldgs., Inc.,* 977 So.2d 700, 703 (La. App. 5th Cir. 2006).

Even if this Court were to assume that there was a water-filled depression described by the plaintiff, and that it  constituted a vice/defect that created an unreasonable risk of harm, the defendants have shown there is nothing in the record to establish that either of the defendants knew or had constructive knowledge of the unreasonably dangerous condition prior to the accident.  There is, in fact, no evidence in the record to establish that there were representatives of TGP on the platform at the time of the accident or at any other time. Further, according to the testimony of the plaintiff, the El Paso personnel on site were gas operators who worked in a different area of the platform, away from Chet Morrison's work group. Thus, the burden shifts to the plaintiff to show evidence of prior knowledge or constructive knowledge by the defendants. *Carr v. Wal-Mart Stores, Inc.,* 772 So.2d 865, 867 (La. App. 5th Cir. 2000), *writ denied* 782 So.2d 636, 2000-3247 (La. 1/26/01). The plaintiff failed to establish the critical knowledge element, and therefore, summary dismissal of the claims brought pursuant to La. C.C. art. 2317 and 2317.1 is appropriate.

*The Alleged Oversized Coveralls:*

It is clear that 'but for' the actions of Charles Endom, the plaintiff's alleged accident would not have occurred.  It is undisputed that the plaintiff never fell, and no part of his body struck any surface on the platform.  However, the plaintiff asserts that his stumble was made worse by the fact that he wore ill-fitting coveralls at the time of the accident, causing him to become tangled up in the loose clothing.  This allegation does not appear in the complaint, rather, the first reference to this allegation appears in discovery responses by the plaintiff.  In *Perkins v. Entergy Corp.*, 782 So.2d 606 (La. 2001), the Louisiana Supreme Court set forth the proper standard for causation in this context:

> Generally, the initial determination in the duty/risk analysis is cause-in-fact. Cause-in-fact usually is a "but for" inquiry, which tests whether the accident would or would not have happened but for the defendant's substandard conduct. Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. To satisfy the substantial factor test, the plaintiff must prove by a preponderance of the evidence that the defendant's conduct was a substantial factor bringing about the complained of harm. [Internal citations omitted]

*Perkins v. Entergy Corp.*  782 So.2d at 611-612.

To succeed against the remaining defendants in this litigation, the plaintiff must prove by a preponderance of the evidence that the defendants' conduct was a substantial factor in bringing about his injury. The defendants assert that they did

not provide the coveralls to plaintiff, a fact confirmed by the plaintiff in his discovery responses and in sworn deposition testimony, acknowledging that he got the coveralls from his superintendent who was leaving the platform.  The provision of fire retardant clothing by Chet Morrison to/for its employees is also confirmed in the deposition testimony of Charles Endom and Shawn Ryan.

The plaintiff testified his superintendent 'Skippy'[8] was taller than he and that he told his superintendents "Shawn and Skippy" the coveralls were too big for him, only to be instructed to roll up the sleeves and legs, which he did.  The deposition testimony by the plaintiff was given December 20, 2012.  On October 15, 2013, he executed an Affidavit wherein he declared he "was provided a fire retardant suit from El Paso, that was too big for him as they did not have one in his size." [Doc. 83-2, para. 1] It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, his sworn testimony. See *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495(5th Cir. 1996). See also *Taylor v. Coastal Securities, Ltd.*, 45 Fed Appx. 326(5th Cir. 2002). Therefore the court finds the self-serving affidavit executed by the plaintiff on October 15, 2013 to be insufficient to generate a dispute of fact

---

[8]Documents in the record, namely a time record submitted by Plaintiff, suggest that the superintendent was Kippy Clements, an employee of Chet Morrison.  The same document identifies a second Chet Morrison superintendent as Shawn Ryan.

due to its inconsistency with the plaintiff's earlier sworn deposition testimony and his discovery responses.  The record demonstrates that the plaintiff received coveralls from his superintendent, a Chet Morrison employee.   Therefore, there is no substandard conduct on the part of the defendants that was a substantial factor in bringing about the plaintiff's injury.

## Conclusion

Given that the plaintiff is proceeding *pro se*, (even though counsel of record opposed the motion) this Court looked to the entirety of the deposition transcripts, with exhibits, and the additional submissions made by the plaintiff at the time of the hearing to determine if there were any genuine issues of material fact as to any of the allegations of fault.  It is undisputed that the plaintiff was employed by an independent contractor working for El Paso/TGP.  His co-employee intentionally stepped on the trailing edge of a rope causing him to stumble. There is no evidence anyone from El Paso or TGP either knew about Endom planning this incident in advance or any evidence that El Paso or TGP had any indication that anybody was going to participate in any unsafe act before it occurred. The plaintiff was wearing fire retardant coveralls provided by his employer, specifically, his superintendent, which may have inhibited his ability to gather his balance.  The coveralls did not cause him to stumble. The incident occurred shortly after a rain storm which

created puddles of  water on the deck that the plaintiff had splashed through even before he arrived at the alleged depression. There is no evidence that there was a depression of the type that would create an unreasonable risk of harm, or if there was such a depression, that El Paso or TGP had actual or constructive knowledge of it.  To the extent Chet Morrison or Charles Endom is at fault for this accident as the plaintiff has maintained from the very beginning of this litigation and maintains to date, his remedy lies against Chet Morrison in the U.S. Department of Labor.

For the reasons set out above, this Court finds that summary judgment is appropriate in this matter, the motion for summary judgment is therefore GRANTED, and the plaintiff's claims against El Paso Natural Gas Company, L.P. and Tennessee Gas Pipeline Company, LLC. will be dismissed with prejudice.

Signed at Lafayette, Louisiana this 30th day of May, 2014.


_____
Patrick J. Hanna
United States Magistrate Judge